# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01650-COA

**DERRICK DORTCH**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

DATE OF JUDGMENT:           10/14/2015
TRIAL JUDGE:                HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:  MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     CYNTHIA ANN STEWART
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: KAYLYN HAVRILLA MCCLINTON
NATURE OF THE CASE:         CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:    PETITION FOR POST-CONVICTION
                            RELIEF  DENIED
DISPOSITION:                AFFIRMED – 04/18/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Derrick Dortch was convicted by the Madison County Circuit Court after pleading

guilty to shooting into an occupied dwelling and to aggravated assault.  Pursuant to the

firearm-enhancement statute, the circuit court enhanced Dortch's sentences.  Dortch later

filed a petition for post-conviction relief (PCR), alleging that the circuit court erred in

enhancing his sentences.  After the circuit court denied Dortch's PCR petition, he filed this

appeal.  We affirm.

## PROCEDURAL FACTS

¶2.     After Dortch's guilty pleas, the circuit court sentenced him to two ten-year concurrent

terms of imprisonment in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended from each sentence, five years of supervised probation for each sentence, and an additional five-year enhancement term to run consecutively to each ten-year term, for a total to ten years to serve.

¶3.     As stated, Dortch filed a PCR petition, arguing that the circuit court erred in enhancing his sentences pursuant to Mississippi Code Annotated section 97-37-37 (Rev. 2014). His argument before the circuit court, as it is here, was that the circuit court erred because he "was not given notice that the court was seeking the enhancement." Specifically, Dortch contends that the court erred when it enhanced his sentence despite the fact that the State had failed to include the enhancements in his two indictments, and never mentioned the enhancements during plea negotiations or in its plea offer. Further, Dortch maintains that he did not receive "any notice of the enhancement[s] until the original plea date of November 1[7], 2014,[1] and only then, by the trial judge." Additional facts, as necessary, will be related during our discussion of this matter.

## DISCUSSION

¶4.     "Whether a defendant received fair notice of a sentence enhancement is a question of law that [appellate courts] review de novo." *Sallie v. State*, 155 So. 3d 760, 762 (¶7) (Miss.

---

[1] Both parties argue, and the front page of the transcript indicates, that the initial plea hearing took place on November 11, 2014. However, the rest of the record—including the actual transcript of the hearing—indicates that the hearing actually took place on November 17, 2014. This inconsistency is most likely the result of a scrivener's error; for clarity, we will use November 17, 2014, as the hearing date.

2015).

¶5.     Dortch's initial plea hearing took place on November 17, 2014, during which Dortch

stated that he wished to plead guilty to both offenses for which he was charged. The

November 17, 2014 plea-hearing transcript is void of any on-the-record mention of the two

sentence enhancements.[2]  However, the court did not accept his guilty plea at that time.

¶6.     Dortch's plea hearing was continued until December 8, 2014, during which the first

on-the-record mention of the two sentence enhancements took place:

> [BY THE COURT]: Do you also understand that both of these cases involve
> the use of a firearm in the commission of the crime, and under 97-37-37, I'm
> mandated to impose a separate sentence in each case of five years.  That would
> be in addition to any sentence imposed for each of those offenses.  Do you
> understand that?
>
> [BY DORTCH]: Yes, sir.
>
> * * * *
>
> [BY THE COURT]: And knowing that, do you still wish to go forward with
> your plea?
>
> [BY DORTCH]: Yes, sir.

---

[2] Of note, however, is that both parties contend in their briefs that Dortch first received notice of the sentence enhancements on the date of his initial plea hearing—November 17, 2014.  Further, on December 8, 2014, when the trial judge first addressed the sentence enhancements, counsel for Dortch acknowledged that he had learned of these enhancements "at the beginning of the plea, but originally, [they were] not part of the recommendation by the State.  [They were] not in the original recommendation, and my client was not indicted under the enhancement portion."  Thus, while Dortch may have received notice of the enhancements on November 17, 2014, such notice must have taken place off the record.

* * * *

[BY THE COURT]: Do you understand that I'm not bound by any recommendation the State may make as to sentence and, instead, I could impose the maximum sentence authorized by law for each of these offenses and order that [they] run consecutively to each other?

[BY DORTCH]: Yes, sir.

[BY THE COURT]: And on top of that, I could tack on the additional five-year mandatory punishment for each of these offenses - -

[BY DORTCH]: Yes, sir.

[BY THE COURT]: - - because of the use of a firearm?

[BY DORTCH]: Yes, sir.

[BY THE COURT]: And knowing that, do you still wish to go forward with your plea?

[BY DORTCH]: Yes, sir.

After this conversation, the trial court asked the State for the factual basis and received the State's sentencing recommendation, which included the two sentence enhancements. After the State gave its recommendation, the court asked Dortch if that was the recommendation he expected to hear, to which Dortch answered, "yes, sir." The court then asked Dortch's counsel if that was the recommendation that he had received from the State and communicated to his client prior to the beginning of the plea. Counsel answered as follows:

Your Honor, at the beginning of the plea, but originally, it was not part of the recommendation by the State. It was not in the original recommendation, and my client was not indicted under the enhancement portion and at the sentencing phase I would like to be heard in argument that the enhancement does not apply.

4

The court requested counsel to approach the bench and held an off-the-record conference. When the proceedings resumed, the court, without addressing the sentence enhancements, stated:

> All right. Mr. Dortch, the bottom line, it's not too late at this point to stop this hearing and proceed to trial, but it will be after I accept your pleas of guilty. So before I do that, I need to make sure this is what you want to do. Do you want to plead guilty?

Dortch responded, "Yes, sir." Thereafter, he pleaded guilty to both charges.

¶7. Immediately after Dortch's guilty pleas were accepted, Dortch's counsel renewed Dortch's argument regarding the sentence enhancements. The court found that although Dortch's indictments did not include section 97-37-37, Dortch had been aware of the enhancements "for some while because [the parties had] gone over [them] a couple of times in open court."[3]

¶8. In support of his argument in his PCR petition and again on appeal, Dortch cites *Sallie*, 155 So. 3d at 763 (¶¶9-10), in which our supreme court found that the defendant, Sallie, "received no proper notice regarding the fact that he was facing a firearm enhancement that would increase his sentence by ten years," where he was not notified that he might be sentenced under the enhancement until after he was convicted by a jury and only then by the trial court, sua sponte. Sallie was indicted for aggravated assault and possession of a firearm as a felon. *Id*. at 761-62 (¶3). "Sallie's indictment did not indicate that the State

---

[3] Our perusal of the record does not indicate any times that the enhancements were discussed other than at the December 8, 2014 plea hearing.

would seek any sentence enhancement. Furthermore, the State in no way indicated pretrial that it would seek the firearm enhancement." *Id*. at 763 (¶9). After Sallie was convicted of the two charges, the trial judge,[4] without provocation by the State, invoked the firearm-enhancement provision set forth in Mississippi Code Annotated section 97-37-37(2) and sentenced Sallie thereunder. *Id*. at 762 (¶3).

¶9.    Sallie appealed his sentence on the basis that "he did not receive fair, pretrial notice that he might be sentenced under the firearm enhancement statute," thereby resulting in "unfair surprise" and a violation of his due-process rights. *Id*. at (¶5). This Court affirmed Sallie's convictions and sentence on the basis that, "given the elements of the crimes as listed in the jury instructions, the jury in this case found the elements of the firearm enhancement beyond a reasonable doubt." *Id*. at 763 (¶8). The Mississippi Supreme Court agreed with our analysis as to this point. *Id*. However, the supreme court reversed our decision on the basis that our analysis "fail[ed] to address the crux of Sallie's argument, that he has a right to fair notice that the sentence enhancement is being sought." *Id*. Further, the supreme court concluded that "Sallie did not receive timely or sufficient notice that the State[5] intended to enhance his sentence using the firearm enhancement," which "violated his right to due process, as he was not given a fair opportunity to present a defense and he was unfairly

---

[4] We note that the trial judge in *Sallie* and the trial judge here are the same.

[5] The supreme court recognized in a footnote that the State "did not actually seek the firearm enhancement, but that the trial court raised it sua sponte. However, after the trial court raised the issue, the [State] argued in support of applying the firearm enhancement to Sallie's sentence."

surprised by the post-conviction notice that the firearm enhancement would be considered."

*Id*. at 764 (¶¶13-14).

¶10.    The circuit court, in its order denying Dortch's PCR petition, found that *Sallie* was inapplicable to Dortch's case because Dortch was given adequate notice of the possible sentence enhancements:

> It is clear from a review of the transcript of the proceedings on November 11th [sic] and December 8, 2014, prior to the entry of his plea of guilty, Dortch was advised of the applicability of [section] 97-37-37(1) and the effect it would have upon his sentence.  He was advised of the mandatory five (5) year additional term for each count and that it would run consecutively to the sentence for each underlying offense.  Dortch acknowledged that he understood and wished to go forward with his pleas of guilty.

We agree.  Dortch is distinct from *Sallie* in the critical aspect that Dortch was notified of the potential sentence enhancements prior to the court accepting his guilty pleas, whereas Sallie was not notified until after a jury convicted him.  Although a mere matter of minutes separates Dortch's and Sallie's circumstances—here, Dortch was notified, at least on the record, of the enhancement minutes prior to entering his guilty plea, whereas Sallie was notified minutes after his conviction—the results are substantial.  Had Sallie been notified of the firearm enhancements prior to his conviction, he might have chosen to alter his defense strategy in accordance with those enhancements.  In contrast, Dortch had the ability to proceed to trial after learning that his sentences would be enhanced.  The trial court notified him that his sentence would be enhanced prior to his entering his guilty plea, and specifically asked him before the court accepted his guilty plea and adjudicated him guilty if he

7

understood that the court was required to impose the mandatory firearm enhancement on both of his convictions.[6] As such, we find that Dortch's case is distinguishable from *Sallie*, and that Dortch, unlike Sallie, was not unfairly surprised or prejudiced with respect to the firearm enhancements.

¶11. No case law requires that an indictment include an actual reference to the sentence enhancement; rather, federal and Mississippi jurisprudence only require that an indictment include the *facts* involved in such an applicable sentence enhancement, such that those facts are required to be proven beyond a reasonable doubt.[7]

¶12. In this case, Dortch was indicted for aggravated assault and shooting into an occupied dwelling. The facts required for application of the firearm enhancement were contained in both of Dortch's indictments. Shooting into an occupied dwelling necessarily requires proof that a firearm was used. The same is true for the commission of the crime of aggravated assault in this case because the aggravated-assault charge is that Dortch shot at his victim with a handgun. As such, it cannot be reasonably argued that Dortch was not put on notice that he might be sentenced under the firearm-enhancement statute. Dortch, along with the

_____

[6] However, we note that Dortch's defense strategy likely would not have changed significantly whether he considered the firearm enhancements or not, as the facts required for proving the enhancements are heavily intertwined with the facts of the two crimes with which Dortch was charged.

[7] The *Apprendi* requirement that such a fact be submitted to a jury is waived here, due to the fact that Dortch entered a plea of guilty with respect to both charges; as Dortch waived his right to a jury trial by pleading guilty, he also waived the requirement that the jury serve as fact-finder with respect to the sentence enhancements. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

rest of the general public, received notice of the statute's existence on the day it was passed by the Mississippi Legislature. Upon receiving his indictment, Dortch knew or should have known that the firearm enhancement was a possibility with respect to the particular crime for which he was charged.

¶13. Dortch was clearly notified by the court prior to entering his guilty pleas that the court would enhance his sentences. According to his attorney's statement, they were not aware at the beginning of the plea hearing on November 17, 2014, that the State intended to seek the sentence enhancement. However, Dortch did not plead guilty until December 8, 2014, and the record indicates that at some point during the November 17, 2014 plea proceedings, he became aware that the State would recommend that his sentences be enhanced. Therefore, we find no merit to his contention that he was unfairly surprised by the fact that the State sought the sentence enhancements.

¶14. **THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION**